## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| **UNIVERSAL ARBOR LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **Case No. 2:22-cv-00041** |
| **v.** | § | |
| | § | **JURY TRIAL DEMANDED** |
| **TECHTRONIC INDUSTRIES CO. LTD.,** | § | |
| | § | |
| **Defendant.** | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Universal Arbor LLC ("Universal Arbor" or "Plaintiff") files this Original Complaint against Techtronic Industries Co. Ltd. ("TTI" or "Defendant") for infringement of U.S. Patent No. 10,245,744 ("the '744 Patent") and U.S. Patent No. 10,953,563 ("the '563 Patent") (collectively, "the Asserted Patents").

## THE PARTIES

1.      Plaintiff is a Texas limited liability company with its principal place of business located in Dallas, Texas.

2.      Upon information and belief, TTI is a Hong Kong (S.A.R.) corporation having its principal place of business at 29/F, Tower 2 Kowloon Commerce Centre 51 Kwai Cheong Road Kwai Chung, N.T., Hong Kong (S.A.R.). TTI does business in the State of Texas and in this District. TTI may be served with process pursuant to the Texas Long Arm Statute and through its agents and managing agents in the United States, including Milwaukee Electric Tool Corp. ("Milwaukee") and TTI's United States subsidiary, Techtronic Industries North America, Inc. TTI may also be served with process in Hong Kong (S.A.R.) pursuant to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters.

3.      Prior to the filing of the Complaint, Universal Arbor repeatedly attempted to engage Defendant and/or its agents in licensing discussions related to the Asserted Patents. Defendant's past and continuing sales of its devices i) willfully infringe the Asserted Patents and ii) impermissibly take the significant benefits of Universal Arbor's patented technologies without fair compensation to Universal Arbor.

4.      On information and belief, Defendant operates in agency with others, including its foreign and U.S.-based subsidiaries. *See, e.g.*, https://www.ttigroup.com/our-company/about-tti/ ("Techtronic Industries Company Limited (the "Company", the "Group" or "TTI") is a fast-growing world leader in Power Tools, Accessories, Hand Tools, Outdoor Power Equipment, and Floorcare for Do-It-Yourself (DIY), professional and industrial users in the home improvement, repair, maintenance, construction and infrastructure industries. The Company is committed to accelerating the transformation of these industries through superior environmentally friendly cordless technology. The TTI brands like MILWAUKEE, RYOBI and HOOVER are recognized worldwide."). Defendant is engaged in making, using, selling, offering for sale, and/or importing, and/or induces its subsidiaries, affiliates, retail partners, and customers in the making, using, selling, offering for sale, and/or importing throughout the United States, including within this District, products, such as oscillating tool blades, accused of infringement. Defendant operates in agency with others, including its foreign and U.S.-based subsidiaries, to provide a distribution channel of infringing products within this District and the U.S. nationally. Defendant, itself and between and amongst its agents and foreign and U.S.-based subsidiaries, purposefully direct the Accused Products into established distribution channels within this District and the U.S. nationally.

5.      On information and belief, Defendant maintains a corporate presence in the United States via at least its, U.S.-based sales subsidiaries including, Milwaukee. Milwaukee is a

Delaware corporation and wholly owned subsidiary of TTI with places of business at 13135 West Lisbon Road Brookfield, WI 53005 and 14329 San Pedro Ave, Ste D, San Antonio, TX 78232. Milwaukee provides sales, distribution, research, and development support in North America for its parent TTI. Milwaukee is an agent of TTI. At the direction and control of TTI, U.S.-based sales subsidiaries including, Milwaukee, import infringing products, such as oscillating tool blades, into the United States and this District.

6.      On information and belief, Defendant and its U.S.-based sales subsidiaries (which act as part of a global network of overseas sales and manufacturing subsidiaries on behalf of Defendant) have operated as agents of one another and vicariously as parts of the same business group to work in concert together and enter into agreements that are nearer than arm's length. For example, Defendant, alone and via at least the activities of its U.S.-based sales subsidiaries (e.g., Milwaukee), conducts business in the United States, including importing, distributing, and selling oscillating tool blades that infringe the Asserted Patents in Texas and this judicial district. *See Trois v. Apple Tree Auction Center, Inc.*, 882 F.3d 485, 490 (5th Cir. 2018) ("A defendant may be subject to personal jurisdiction because of the activities of its agent within the forum state…."); *see also Cephalon, Inc. v. Watson Pharmaceuticals, Inc.*, 629 F. Supp. 2d 338, 348 (D. Del. 2009) ("The agency theory may be applied not only to parents and subsidiaries, but also to companies that are 'two arms of the same business group,' operate in concert with each other, and enter into agreements with each other that are nearer than arm's length.").

7.      Through offers to sell, sales, imports, distributions, and other related agreements to transfer ownership of Defendant's oscillating tool blades, with distributors and customers operating in and maintaining a significant business presence in the U.S. and/or its U.S. subsidiaries

(e.g., Milwaukee), Defendant does business in the U.S., the state of Texas, and in the Eastern District of Texas.

## JURISDICTION AND VENUE

8.      This action arises under the patent laws of the United States, namely 35 U.S.C. §§ 271, 281, and 284-285, among others.

9.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

10.     This Court has general and specific personal jurisdiction over TTI pursuant to due process and/or the Texas Long Arm Statute because, inter alia, (i) Defendant has done and continues to do business in Texas and (ii) Defendant has, directly and through intermediaries, committed and continue to commit acts of patent infringement in the State of Texas, including making, using, offering to sell, and/or selling accused products in Texas, and/or importing accused products into Texas, including by Internet sales and sales via retail and wholesale stores, inducing others to commit regular acts of patent infringement in Texas, and/or committing a least a portion of any other infringements alleged herein. Defendant has placed, and is continuing to place, infringing products into the stream of commerce, via an established distribution channel, with the knowledge and/or understanding that such products are sold in Texas, including in this District. Defendant has derived substantial revenues from its infringing acts occurring within Texas and within this District. Defendant has substantial business in this State and judicial district, including: (A) at least part of its infringing activities alleged herein; and (B) regularly doing or soliciting business, engaging in other persistent conduct, and/or deriving substantial revenue from infringing goods offered for sale, sold, and imported, and services provided to Texas residents vicariously

through and/or in concert with its alter egos, intermediaries, agents, distributors, importers, customers, subsidiaries, and/or consumers.

11.    This Court has personal jurisdiction over Defendant, directly or through intermediaries, distributors, importers, customers, subsidiaries, and/or consumers including its U.S.-based sales subsidiaries, e.g., Milwaukee. Through direction and control of such subsidiaries, Defendant has committed acts of direct and/or indirect patent infringement within Texas, and elsewhere within the United States, giving rise to this action and/or has established minimum contacts with Texas such that personal jurisdiction over Defendant would not offend traditional notions of fair play and substantial justice. Milwaukee is a wholly-owned subsidiaries of Defendant. The primary business of Milwaukee is the marketing and sale of tools and tool accessories in the United States. Defendant has a 100% controlling ownership interest in Milwaukee and maintains more than half of the voting rights for such subsidiaries as its basis for control. Upon information and belief, Defendant compensates Milwaukee for its sales support services in the United States. As such, Defendant has a direct financial interest in its U.S.-based subsidiaries, and vice versa.

12.    Personal jurisdiction is proper because Defendant has committed acts of infringement in this District. This Court has personal jurisdiction over Defendant because, *inter alia*, this action arises from activities Defendant purposefully directed towards the State of Texas and this District.

13.    Exercising personal jurisdiction over Defendant in this District would not be unreasonable given Defendant's contacts in this District, the interest in this District of resolving disputes related to products sold herein, and the harm that would occur to Universal Arbor.

14.     In addition, Defendant has knowingly induced and continues to knowingly induce infringement within this District by advertising, marketing, offering for sale and/or selling devices pre-loaded with infringing functionality within this District, to consumers, customers, manufacturers, distributors, resellers, partners, and/or end users, and providing instructions, user manuals, advertising, and/or marketing materials which facilitate, direct or encourage the use of infringing functionality with knowledge thereof.

15.     Personal jurisdiction also exists specifically over Defendant because Defendant, directly or through affiliates, subsidiaries, agents, or intermediaries, transacts business in this State or purposefully directed at this State (including, without limitation, retail stores including Home Depot and Lowe's) by making, importing, offering to sell, selling, and/or having sold infringing products within this State and District or purposefully directed at this State or District.

16.     Personal jurisdiction also exists specifically because Defendant has overlapping executives, interlocking corporate structures, and close relationships as manufacturer, importer, and distributor of the products accused of infringement.

17.     To the extent the foreign Defendant is not subject to jurisdiction in any state's court of general jurisdiction, exercising jurisdiction over Defendant in this State and this District would be consistent with due process and this State's long-arm statute and under national contacts in light of the facts alleged in this Complaint.

18.     In addition, Defendant, directly or through affiliates, subsidiaries, agents, or intermediaries, places infringing products into the stream of commerce knowing they will be sold and used in Texas, and economically benefits from the retail sale of infringing products in this State. For example, Defendant's products have been sold and are available for sale in this District at Home Depot and Lowe's retail stores and are also available for sale and offered for sale in this

District through online retailers such as Home Depot, Lowe's, and Amazon. Defendant also advertises its infringing products to consumers in Texas and this District through its agent's websites. *See,  e.g.*,  https://www.milwaukeetool.com/Products/Accessories/Cutting/Multi-Tool-Blades.

19.     With respect to the Asserted Patents, the Accused Products include oscillating tool blades that Defendant advertise as providing a "Universal Fit," "Universal Shank," or "Open-Lok" (e.g., the "Open-Lok 3pc All Purpose Multi-Tool Blade Variety Pack" and "Universal Fit Open-Lok Titanium Enhanced Bi-Metal Metal Blades") and other devices. On information and belief, Defendant controls or otherwise directs and authorizes all activities of its U.S.-based sales subsidiaries, including Milwaukee. Such directed and authorized activities include, the U.S.-based subsidiaries' using, offering for sale, selling, and/or importing the Accused Products, their components, and/or products containing the same that incorporate the fundamental technologies covered by the Asserted Patents. The Defendant's U.S.-based sales subsidiaries (e.g., Milwaukee) are authorized to import, distribute, sell, or offer for sale the Accused Products on behalf of Defendant. For example, Defendant researches, designs, develops, and manufactures oscillating tool blades, and then directs its U.S.-based sales subsidiaries to import, distribute, offer for sale, and sell the Accused Products in the United States. *See, e.g., United States v. Hui Hsiung*, 778 F.3d 738, 743 (9th Cir. 2015) (finding that the sale of infringing products to third parties rather than for direct import into the U.S. did not "place [defendants'] conduct beyond the reach of United States law [or] escape culpability under the rubric of extraterritoriality"). Furthermore, Defendant's U.S.-based sales subsidiaries also administer, on behalf of Defendant, requests for service under and any disputes arising from Defendant's limited warranty of the Accused Products sold in the U.S., including    in    Texas    and    this    judicial    district.    *See,    e.g.*,

https://www.milwaukeetool.com/Support/Registration-and-Warranty;

https://www.milwaukeetool.com/Support. Thus, Defendant's U.S.-based sales subsidiaries, including Milwaukee, conduct infringing activities on behalf of Defendant.

20.  On information and belief, Defendant's U.S.-based sales subsidiaries' corporate presence in the United States gives Defendant substantially the same business advantages that it would have enjoyed if it conducted its business through its own offices or paid agents in the state. Defendant's U.S.-based sales subsidiaries are authorized to import, distribute, sell, and offer for sale Defendant's products, including oscillating tool blades incorporating infringing components, on behalf of Defendant. For example, Defendant's U.S.-based sales subsidiaries operate within Defendant's global network of sales subsidiaries. In the U.S., including within the Eastern District of Texas, Defendant's oscillating tool blades, which incorporate infringing components, are imported, distributed, offered for sale, and sold.

21.  Via Defendant's alter egos, agents, intermediaries, distributors, importers, customers, subsidiaries, and/or consumers maintaining a business presence, operating in, and/or residing in the U.S., Defendant's products, including products accused of infringing the Asserted Patents, are or have been widely distributed and sold in retail stores, both brick and mortar and online, in Texas including within this judicial district. *See Litecubes, LLC v. Northern Light Products, Inc.*, 523 F.3d 1353, 1369-70 (Fed. Cir. 2008) ("[T]he sale [for purposes of § 271] occurred at the location of the buyer."); *see also Semcon IP Inc. v. Kyocera Corp.*, No. 2:18-cv-00197-JRG, 2019 WL 1979930, at *3 (E.D. Tex. May 3, 2019) (denying accused infringer's motion to dismiss because plaintiff sufficiently plead that purchases of infringing products outside of the United States for importation into and sales to end users in the U.S. may constitute an offer to sell under § 271(a)). For example, Defendant's oscillating tool blades are sold to end users by the U.S.-based

subsidiaries, distributors, and customers, including, but not limited to, Milwaukee, online and at retail stores located throughout the Eastern District of Texas.

22.     On information and belief, Defendant has placed and continues to place infringing products and/or products that practice infringing processes into the stream of commerce via established distribution channels comprising at least subsidiaries and distributors, such as Milwaukee, and customers such as Home Depot, Lowe's, and Amazon, with the knowledge and/or intent that those products are and/or will be imported, used, offered for sale, sold, and continue to be sold in the United States and Texas, including in this judicial district. As a result, Defendant has, vicariously through and/or in concert with its alter egos, agents, intermediaries, distributors, importers, customers, subsidiaries, and/or consumers, placed the Accused Products into the stream of commerce via established distribution channels with the knowledge and/or intent that those products were sold and continue to be sold in the United States and Texas, including in this judicial district.

23.     In the alternative, the Court has personal jurisdiction over Defendant under Federal Rule of Civil Procedure 4(k)(2), because the claims for patent infringement in this action arise under federal law, Defendant is not subject to the jurisdiction of the courts of general jurisdiction of any state, and exercising jurisdiction over Defendant is consistent with the U.S. Constitution.

24.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because, among other things, Defendant is not a resident in the United States, and thus may be sued in any judicial district, including this one, pursuant to 28 U.S.C. § 1391(c)(3). *See In re HTC Corp.*, 889 F.3d 1349, 1357 (Fed. Cir. 2018) ("The Court's recent decision in *TC Heartland* does not alter" the alien-venue rule.).

## THE ASSERTED PATENTS

25.    The '744 Patent is titled "Accessory for Oscillating Power Tools." The inventions claimed in the '744 Patent generally relate to a new and novel configuration of an accessory for attachment to an oscillating power tool (e.g., a power tool blade).

26.    The '744 Patent lawfully issued on April 2, 2019, from Application No. 15/238,491.

27.    The named inventor on the '744 Patent is Cherif Morcos.

28.    The '744 Patent claims priority to U.S. Patent Application No. 12/932,728, which was filed on March 7, 2011, and U.S. Provisional Application No. 61/316,294, which was filed on March 22, 2010.

29.    The specification of the '744 Patent discloses shortcomings in the prior art and then explains, in detail, the technical way the inventions claimed in the '744 Patent resolve or overcome those shortcomings. *See, e.g.*, '744 Patent, 1:25-3:31.

30.    The technologies claimed in the '744 Patent consist of features and functions that were not, alone or in combination, considered well-understood by, and routine, generic, and conventional to skilled artisans in the industry at the time of invention.

31.    Each claim of the '744 Patent is presumed valid and is directed to patent eligible subject matter under 35 U.S.C. § 101.

32.    The '563 Patent is titled "Accessory for Oscillating Power Tool." The inventions claimed in the '563 Patent generally relate to a new and novel configuration of an accessory for attachment to a power tool (e.g., a blade to an oscillating tool).

33.    The '563 Patent lawfully issued on March 23, 2021 and stems from Application No. 16/273,512.

34.    The named inventor on the '563 Patent is Cherif Morcos.

35.     The '563 Patent claims priority to U.S. Patent Application No. 15/238,491, that issued as the '744 Patent, U.S. Patent Application No. 12/932,728, which was filed on March 7, 2011, and U.S. Provisional Application No. 61/316,294, which was filed on March 22, 2010.

36.     The specification of the '563 Patent discloses shortcomings in the prior art and then explains, in detail, the technical way the inventions claimed in the '563 Patent resolve or overcome those shortcomings. *See, e.g.*, '563 Patent, 1:28-3:34.

37.     The technologies claimed in the '563 Patent consist of features and functions that were not, alone or in combination, considered well-understood by, and routine, generic, and conventional to skilled artisans in the industry at the time of invention.

38.     Each claim of the '563 Patent is presumed valid and is directed to Patent eligible subject matter under 35 U.S.C. § 101

## COUNT I
### (Infringement of U.S. Patent No. 10,245,744)

39.     Plaintiff incorporates paragraphs 1 through 38 herein by reference.

40.     This cause of action arises under the patent laws of the United States, including 35 U.S.C. §§ 271, *et seq*.

41.     Plaintiff is the owner of the '744 Patent with all substantial rights to the '744 Patent including the exclusive right to enforce, sue, and recover damages for past and future infringement.

42.     The '744 Patent is valid, enforceable and was duly issued in full compliance with Title 35 of the United States Code.

### DIRECT INFRINGEMENT (35 U.S.C. § 271(a))

43.     Defendant has, and continues to, infringe one or more claims of the '744 Patent in this District and elsewhere in Texas and the United States.

44.     On information and belief, Defendant has, and continues to, either by themselves

or via an agent, infringe claims of the '744 Patent (including for example, and as illustrated below, Claim 17) by, among other things, making, selling, offering for sale, using, and/or importing attachments (the "Accused Products") for an oscillating tool, including Milwaukee branded attachments advertised as designed with or featuring "Universal Fit Open-Lok," "Open-Lok," or "Universal Shank" branded attachments and "Imperial Blade" branded attachments advertised as designed with or featuring "One Fit" branded attachments.

45.     The following paragraphs show an example of how the Accused Products infringe Claim 17 of the '774 Patent.

46.     The Accused Products are each an "accessory for use with an oscillating power tool."



**Universal Fit Open-Lok™ Extreme Materials Titanium Enhanced Carbide Teeth Blade**

★★★★★   5.0 (1)   Write a review

Our Universal Fit OPEN-LOK™ Titanium Enhanced Carbide Teeth EXTREME Materials Blades for Oscillating Multi-Tools are designed for use in the most Extreme material cutting applications. For use in wood, screws, nails, cement board, plaster, and other cutting applications, the Titanium Enhanced Carbide Teeth Extreme Materials Blade is complete with a thinner blade and unique aggressive tooth design that offers faster cutting performance in wood when compared to the standard carbide blade. The Extreme Materials Carbide Teeth Blade lasts up to 50X longer than standard bi-metal blades and can be used in a wide range of materials. These Milwaukee multi-tool blades are designed and made in the USA with global materials. This blade is available in 1-3/8" width in 1, 2, 3 and 5 packs.

The Accused Products all are designed to connect to an oscillating power tool. For example, Defendant's websites advertise that the Accused Products are "for Oscillating Multi-Tools" and include, for example, Universal Fit, Open-Lok, Universal Shank, or One Fit features that allow tool compatibility with a wide array of oscillating tool manufacturers. *See, e.g.,* https://www.milwaukeetool.com/Products/Accessories/Cutting/Multi-Tool-Blades/Universal-Fit-Open-Lok-Extreme-Materials-Titanium-Enhanced-Carbide-Teeth-Blade; https://imperialblades.com/blades/one-fit/ .

47.    The Accused Products include "a body having a functional portion for performing work and an attachment portion for mounting the accessory to the oscillating power tool." As illustrated in the image below, the Accused Products include a body with a "functional portion for performing work" (e.g., a blade edge or, sanding pad) and "an attachment portion for mounting the accessory to [an] oscillating power tool."



48.    As illustrated by the image below, the attachment portion of the Accused Products includes an arbor defined at the attachment portion and configured to matingly engage attachment elements of a drive flange of an oscillating power tool and which comprises a plurality of openings.



49.     As illustrated by the image below, the Accused Products further include an "arbor comprising a plurality of openings including: a primary opening comprising[] a central opening defining a central axis of the arbor[,] a first elongated opening conjoined with the central opening and extending radially from the central axis along a first radial axis[,] a second elongated opening conjoined with the central opening and extending radially from the central axis along a second radial axis." As also illustrated by the image below, the "second radial axis is substantially orthogonal to said first radial axis."



50.    As further illustrated by the image below, the "the first elongated opening and the second elongated opening each extend radially to a first specific radial distance measured from the central axis of the arbor."



51.    As illustrated by the image below, the Accused Products also include an "arbor comprising a plurality of openings including … a set of secondary openings disjoined from said primary opening and positioned radially about the central axis along respective radial axes distinct from said first and second radial axes."



52.    And, as illustrated below, in the Accused Products the "secondary openings in the set of secondary openings extend[] to a second specific radial distance measured from the central axis of the arbor wherein the second specific radial distance to which the secondary openings extend is the same as the first specific radial distance to which the first and second elongated openings extend."



53.    Defendant is liable for its infringements of the '744 Patent pursuant to 35 U.S.C. § 271.

**INDIRECT INFRINGEMENT (INDUCEMENT - 35 U.S.C. § 271(b))**

54.    Based on the information presently available to Plaintiff, absent discovery, and in the alternative and in addition to direct infringement, Plaintiff contends that Defendant has, and continues to, indirectly infringe one or more claims of the '744 Patent by inducing direct infringement by others, including, but not limited to, its subsidiaries and end users of the Accused

Products.

55.    Defendant has had knowledge of the '744 Patent and its infringement since at least May 28, 2020, when TTI received of a letter from Universal Arbor's counsel dated May 26, 2020. The letter included claim charts detailing infringement by Milwaukee and Imperial Blades branded oscillating tool accessories and invited TTI to engage in licensing discussions with Plaintiff. TTI forwarded that letter to Milwaukee's in-house counsel. Milwaukee's in-house counsel, acting on behalf of Defendant, and Plaintiff preliminarily discussed a potential license but did not reach an agreement.

56.    On information and belief, despite having knowledge of the '744 Patent and its infringement, Defendant TTI has specifically intended and encouraged one or more of its subsidiaries to make, offer for sale, or sell in the United States and/or import Accused Products into the United States, which (as illustrated above) infringe claims of the '744 Patent. Defendant TTI's acts have resulted in, and continue to result in, direct infringement by such subsidiaries for making, offering for sale, selling, and/or importing Accused Products.

57.    Defendant has also specifically intended and encouraged individuals in this district and elsewhere in the United States to directly infringe claims of the '744 Patent (e.g., Claim 17 as described above) by acquiring and using Accused Products. Despite having knowledge of the '744 Patent and its infringement, Defendant has instructed and encouraged end users of the Accused Products to use such devices in a manner that infringes the '744 Patent. For example, Defendant provides detailed instructions (e.g., instruction manuals) via their websites and provides product packaging describing how to connect and use Accused Products with an oscillating tool. Defendant also encourages the infringing use of Accused Products through advertising (e.g., videos available through    Defendant's    "Milwaukee    Tool"    YouTube    channel    (*see*,    *e.g.,*

https://www.youtube.com/watch?v=GqyLsqYVq9k)). Defendant's acts have resulted in, and continue to result in, direct infringement for use of Accused Products by end users of such products.

58.    Plaintiff has been damaged as a result of Defendant's infringing conduct described in this Count. Defendant is thus liable to Plaintiff in an amount that adequately compensates Plaintiff for Defendant's infringement, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

59.    Plaintiff has satisfied the requirements of 35 U.S.C. § 287 and is entitled to recover damages for infringement occurring before the filing of this lawsuit.

## COUNT II
### (Infringement of U.S. Patent No. 10,953,563)

60.    Plaintiff incorporates paragraphs 1 through 59 herein by reference.

61.    This cause of action arises under the Patent laws of the United States, including 35 U.S.C. §§ 271, *et seq*.

62.    Plaintiff is the owner of the '563 Patent with all substantial rights to the '563 Patent including the exclusive right to enforce, sue, and recover damages for past and future infringement.

63.    The '563 Patent is valid, enforceable and was duly issued in full compliance with Title 35 of the United States Code.

### DIRECT INFRINGEMENT (35 U.S.C. § 271(a))

64.    Defendant has, and continues to, infringe one or more claims of the '563 Patent in this District and elsewhere in Texas and the United States.

65.    On information and belief, Defendant has, and continues to, either by themselves or via an agent, infringe claims of the '563 Patent (including for example, and as illustrated below, Claim 1) by, among other things, making, selling, offering for sale, using, and/or importing

attachments (the "Accused Products") for an oscillating tool, including Milwaukee branded attachments advertised as designed with or featuring "Universal Fit Open-Lok," "Open-Lok," or "Universal Shank" branded attachments and Imperial Blade branded attachments advertised as designed with or featuring "One Fit" branded attachments.

66.    The following paragraphs show an example of how the Accused Products infringe Claim 1 of the '563 Patent.

67.    The Accused Products are each an "[a]n accessory for use with an oscillating power tool."



**Universal Fit Open-Lok™ Extreme Materials Titanium Enhanced Carbide Teeth Blade**

★★★★★   5.0 (1)   Write a review

Our Universal Fit OPEN-LOK™ Titanium Enhanced Carbide Teeth EXTREME Materials Blades for Oscillating Multi-Tools are designed for use in the most Extreme material cutting applications. For use in wood, screws, nails, cement board, plaster, and other cutting applications, the Titanium Enhanced Carbide Teeth Extreme Materials Blade is complete with a thinner blade and unique aggressive tooth design that offers faster cutting performance in wood when compared to the standard carbide blade. The Extreme Materials Carbide Teeth Blade lasts up to 50X longer than standard bi-metal blades and can be used in a wide range of materials. These Milwaukee multi-tool blades are designed and made in the USA with global materials. This blade is available in 1-3/8" width in 1, 2, 3 and 5 packs.

The Accused Products are designed to connect to an oscillating power tool. For example, Defendant's websites advertise that the Accused Products are "for Oscillating Multi-Tools" and include, for example, Universal Fit, Open-Lok, Universal Shank, or One Fit features that allow tool compatibility with a wide array of oscillating tool manufacturers. *See, e.g.,* https://www.milwaukeetool.com/Products/Accessories/Cutting/Multi-Tool-Blades/Universal-Fit-Open-Lok-Extreme-Materials-Titanium-Enhanced-Carbide-Teeth-Blade; https://imperialblades.com/blades/one-fit/ .

68.    The Accused Products include "an elongated body having a distal end disposed at a first half of the elongated body and a proximal end disposed at a second half of the elongated

body, the proximal end having a functional portion for performing work and the distal end having

an attachment portion for mounting the accessory to the oscillating power tool." As illustrated in

the image below, the Accused Products include an "elongated body" with a "proximal end" having

a "functional portion for performing work" (e.g., a blade edge or, a sanding pad) and a "distal end"

having "an attachment portion for mounting the accessory to [an] oscillating power tool."



69.     As illustrated by the image below, the Accused Products include an "an arbor defined at the attachment portion of the body, the arbor being configured to engage attachment elements of a drive flange of the oscillating power tool."



70.     As illustrated by the image below, the arbor in the Accused Products comprises "a plurality of openings including: a primary opening comprising: a central opening defining a central axis of the arbor; a first elongated opening conjoined with the central opening and extending radially from the central axis along a first radial axis; a second elongated opening conjoined with the central opening and extending radially from the central axis along a second radial axis." As also illustrated by the image below, "the second radial axis is substantially orthogonal to the first radial axis."



71.    As further illustrated by the image below, the "the first elongated opening and the second elongated opening each extend radially to a first specific radial distance measured from the central axis of the arbor."



72.    As illustrated by the image below, the Accused Products also include an "arbor comprising a plurality of openings including … a set of secondary elongated openings disjoined from the primary opening and positioned radially about the central axis along respective radial axes."



73.    And, as illustrated below, in the Accused Products "each elongated opening of the set of secondary elongated openings has a first end and a second end, wherein each of the first ends is located at the first specific radial distance and each of the elongated openings extend radially towards the central axis."



74.    Defendant is liable for its infringements of the '563 Patent pursuant to 35 U.S.C. § 271.

**INDIRECT INFRINGEMENT (INDUCEMENT - 35 U.S.C. §271(b))**

75.    Based on the information presently available to Plaintiff, absent discovery, and in the alternative and in addition to direct infringement, Plaintiff contends that Defendant has, and continues to, indirectly infringe one or more claims of the '563 Patent by inducing direct

infringement by others, including, but not limited to, its subsidiaries and end users of the Accused Products.

76.     Defendant has had knowledge of the '563 Patent and its infringement since at least the issuance of the '563 Patent on March 23, 2021. As noted above in the corresponding section for the '744 Patent, Plaintiff and Defendant had preliminary licensing discussions in 2020. As a result of those discussions, Defendant became aware of and monitored the application that issued into the '563 Patent.

77.     On information and belief, despite having knowledge of the '563 Patent and its infringement, Defendant TTI has specifically intended and encouraged one or more of its subsidiaries to make, offer for sale, or sell in the United States and/or import Accused Products into the United States Accused Products, which (as illustrated above) infringe claims of the '563 Patent. Defendant TTI's acts have resulted in, and continue to result in, direct infringement by such subsidiaries for making, offering for sale, selling, and/or importing Accused Products.

78.     Defendant has also specifically intended and encouraged individuals in this District and elsewhere in the United States to directly infringe claims of the '563 Patent (e.g., Claim 1 as described above) by acquiring and using Accused Products. Despite having knowledge of the '563 Patent and its infringement, Defendant has instructed and encouraged end users of the Accused Products to use such devices in a manner that infringes the '563 Patent. For example, Defendant provides detailed instructions (e.g., instruction manuals) via their websites and with product packaging describing how to connect and use Accused Products with an oscillating tool. Defendant also encourages the infringing use of Accused Products through advertising (e.g., videos available through Defendant's "Milwaukee Tool" YouTube channel (*see, e.g.,* https://www.youtube.com/watch?v=GqyLsqYVq9k)). Defendant's acts have resulted in, and

continue to result in, direct infringement for use of Accused Products by end users of such products.

79.    Plaintiff has been damaged as a result of Defendant's infringing conduct described in this Count. Defendant is thus liable to Plaintiff in an amount that adequately compensates Plaintiff for Defendant's infringement, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

80.    Plaintiff has satisfied the requirements of 35 U.S.C. § 287 and is entitled to recover damages for infringement occurring before the filing of this lawsuit.

## COUNT III
### (Willful Infringement)

81.    Plaintiff incorporates paragraphs 1 through 80 herein by reference.

82.    Prior to the filing of this action, Defendant was aware of their infringement of the Asserted Patents.

83.    As detailed above, Plaintiff's counsel sent Defendant TTI a claim chart detailing Defendant's infringement of the '744 Patent, which TTI sent to Milwaukee. Milwaukee's in-house counsel, acting on behalf of Defendant, and Plaintiff preliminarily discussed a potential license but did not reach an agreement. As a result of that discussion, Defendant became aware of and monitored the application that issued into the '563 Patent.

84.    Defendant has been, or should have been, aware of its infringement of the '744 Patent since at least its receipt and Universal Arbor's letter dated May 26, 2020.

85.    Defendant has been, or should have been, aware of its infringement of the '563 Patent since at least its issuance on March 23, 2021.

86.    On information and belief, despite being aware of the Asserted Patents and their infringement of the Asserted Patents, Defendant has not changed or otherwise altered the Accused

Products or its practices to avoid infringing the Asserted Patents. Rather, despite having notice of the Asserted Patents, Defendant has, and continues to, infringe the Asserted Patents, directly and/or indirectly, in disregard to Plaintiff's patent rights.

87.     Defendant has acted recklessly and/or egregiously, and continues to willfully, wantonly, and deliberately engage in acts of infringement of the Asserted Patents, justifying a finding of willful infringement and an award to Plaintiff of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## JURY DEMAND

Plaintiff requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

Plaintiff asks that the Court find in its favor and against Defendant and that the Court grant Plaintiff the following relief:

a.    Judgment that one or more claims of the Asserted Patents has been infringed, either literally and/or under the doctrine of equivalents, by Defendant;

b.    Judgment that one or more claims of the Asserted Patents have been willfully infringed, either literally and/or under the doctrine of equivalents, by Defendant;

c.    M incurred by Plaintiff as a result of Defendant's infringing activities and other conduct complained of herein, including an accounting for any sales or damages not presented at trial;

d.    Judgment that Defendant account for and pay to Plaintiff a reasonable, ongoing, post judgment royalty because of Defendant's infringing activities, including continuing infringing activities, and other conduct complained of herein;

e.    That Plaintiff be granted pre-judgment and post judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein;

f.    Judgment that this case be found as exceptional under the provisions of 35 U.S.C. § 285 and award enhanced damages; and

g.   That Plaintiff be granted such other and further relief as the Court may deem just and proper under the circumstances.

Dated: February 3, 2022                    Respectfully submitted,

**PLATT CHEEMA RICHMOND PLLC**

 */s/ Matthew C. Acosta*
Matthew C. Acosta
Texas Bar No. 24062577
macosta@pcrfirm.com
Andrew Lin
Texas Bar. No. 24092702
alin@pcrfirm.com
Nicholas C. Kliewer
Texas Bar No. 24083315
nkliewer@pcrfirm.com
1201 N. Riverfront Blvd., Suite 150
Dallas, Texas 75207
214.559.2700 Main
214.559.4390 Fax

**ATTORNEYS FOR PLAINTIFF
UNIVERSAL ARBOR LLC**